Once you let the other side get settled first before you start. Your Honor, may it please the Court, indeed, it is my honor to appear in front of you. Thank you for this opportunity. This is a case that concerns contract, it concerns promissory estoppel, it concerns tortious interference, and of course it concerns fraud in the inducement and fraud by omission. This is a factually intensive case, as I'm sure Your Honor has seen, in terms of the conduct, particularly the contract claim, which deals with an explicit contract. There were two contracts here. One was for a Jersey sponsorship agreement with the Houston Rockets, and also an implied contract, which is entitled to the same force and effect as an express contract, except that it arrives over a course of conduct, parties taking certain actions, relying upon each other, giving consideration. The lower court dismissed the case, despite Supreme Court precedent under Bell Atlantic v. Twomby, that if there's any plausibility to a claim on a 12b6 motion, you can't dismiss the case. There was no discovery in this case, none at all. It was stayed throughout the entire proceeding. Now getting back to the two contracts that are involved here, one was a sponsorship agreement where my client, we'll call it Rokit, there are three companies, was to have their logo put on the jerseys of the Houston Rockets. That was worth a lot of money in terms of sales. Because my client sells beverages, they sell alcoholic beverages, they sell other types of beverages, and there were promises made and contractual commitments made that these products would be sold in conjunction with that at the arena there. But as importantly, and even more importantly, because my client paid nearly $10 million up front just for this jersey sponsorship agreement, was the enticement, the sweetener that was provided by the appellees, which is the Fertitta Entertainment and Landry's. They own, Tillman Fertitta is a billionaire, he owns over 600 major restaurants, gambling facilities throughout the United States and the world. And the beverage agreement, which his son, Patrick, entered into to try to negotiate and he as well, was to showcase the product of my client on all of those establishments. Huge amount of potential sales and money. Both agreements are valid. The express contract is valid and the implied contract is valid. In fact, case law, and I'm sure your Honor is aware of it, I'm sure you've had many contract cases, it is equal. In other words, an applied contract is just as good as an express contract and therefore, it falls without side of the statute of frauds even if the performance was for more than one year. But in this case, there's never been a showing that the contract, the beverage contract, couldn't have been performed in less than one year. And that's a subject for discovery as well. Yet, the court dismissed the case in the entirety of it, essentially on the statute of frauds. Now, here's something that's really important to remember in terms of the implied contract. That's the beverage agreement. Is that based upon representations that we could do sales like you've never seen before at all of these establishments of the alcoholic and other beverages of the Roque at Apeliz? My client moved forward and invested a lot of money. Invested money in getting distributors, distributors, by the way, that the Apeliz wanted us to use, their distributors. They produced the products. They had to gear up for the products. They had another company, which was to supply all of that, which was the liquor company that came into effect. That was to supply that. They had advertising that they did. And, of course, getting ready to meet the demand, they had to hire many employees. Eventually, they had to lay off 27 of those employees when this did not come to fruition. Now, the excuse that's being used by the Apeliz as to why they couldn't perform on the contract is that the contract was illegal. That's incredible. After the fact, after they intentionally induced my client to enter into contracts, they said, oh, it's illegal. Sorry, we can't do it under alcohol regulations or NBA regulations. Well, they were in a superior position than my client. It was not in pari delicto. So is Texas law going to allow two parties, and you decide which one is more sophisticated and only the more sophisticated one, if it's true, Landrieu's is that, has to know what the law is? Well, there is case law to that effect, Your Honor, because . . . Only them? Because of a little bit of superior knowledge? That's one aspect of what we're claiming, Your Honor. It's not the primary aspect of what we're claiming. I'm adding that in for good measure. But we should have been advised as to what the intentions were of the Fertitta and Landrieu's group, and they only raised this argument after we had to bring a lawsuit. It was never raised before. So it's not just that, and this is not the primary aspect of it, but it was the fact that we were induced to get into this relationship. We even created a company, Bogart's LLC, to supply the product that I just referenced before, that we were induced to get into it because the Rockets and the Fertitta group, which owns the Rockets, wanted us to pump millions of dollars into a sponsorship agreement to have our patches on their jerseys. And what actually they said to us was, put that money into the sponsorship agreement, the jersey sponsorship agreement, but you'll make much more with the beverage agreement. She'll pay for the whole thing. So there is a fraud that was committed here, Your Honor, and that is not within the statute of frauds. And, Your Honor, I turn your attention to a case by the Supreme Court of Texas, Formosa Plastics Corporation, United States v. Presidio, 960 SW 2nd 41, Supreme Court of Texas, where the facts are very, very similar here. Let me ask you, and then you can get back to it. Was this in your briefs, this case you're telling us? This Formosa case? I don't remember whether it is or is not, Your Honor. Proceed. But it is a case that's out there, which I wanted to bring to your attention. And in that case, it was held that fraud in the inducement would not be subject to a statute of frauds. Now, we're claiming either way we are not knocked out by the statute of frauds because we have a valid implied contract here, which is just as good as an express contract. And the contract could have been performed in less than a year. That is subject to discovery. We need to discover. We need to develop the facts here. But under this case and other cases like it, like the Haas decision, which is in our brief, is that Texas recognizes two measures of direct damages for common law fraud, the out-of-pocket measure and the benefit of the bargain measure. So regardless of any decision by the lower court, which we respectfully maintain was incorrect, they could not take this away from the trier of fact on a 12B6 motion. They had to go to discovery at least. But under that standard, we would be entitled to those damages in any event. And that should go back, as it did in the Formosa case, at a minimum to get into the issue of damages here. There they were to retrial the case just simply on that issue. When you say damages, are you speaking narrowly of out-of-pocket expenses? Or are you talking more broadly? Are those the damages you're talking about? I'm talking both, okay? And here's what the law is in Texas, quoting from Formosa, the out-of-pocket measure computes the difference between the value paid and the value received. My client paid in almost $10 million, got virtually nothing in return. While the benefit of the bargain measure computes the difference between the values represented and the value received. Now, the values represented was huge. My client estimated they could have done $400 million worth of sales at these 600 facilities that the Fertitta Entertainment Group owned. It was huge. Let me talk about the out-of-pocket expenses. There seems to be case law that you have cited, and I think was cited in district court as well, that even if the contract violates the statute of frauds, the affected party, the harmed party, may be entitled to recover out-of-pocket expenses, reasonably incurred, whatever the elements are. I'm just surprised that the Judge Eskridge didn't address that. Was that raised in your briefing in district court, that this is a separate component of damages that might overcome the statute of frauds? I was not the lawyer at the lower court level, but I believe it was, Your Honor. Besides, we never got to that point because it didn't get past the allegations of the complaint. We weren't there to conduct discovery in court. We never had an opportunity for discovery, and it was out-of-pocket expenses. Well, there was a motion to dismiss, and the issue was how much of the case needed to be dismissed, and if there's a separate component of Texas law that this part of the case can survive a motion to dismiss of the statute of frauds, it would have been at least something worth mentioning in a brief. So I'm just wondering why Judge Eskridge missed it. He certainly mentioned it in our brief, and in the second amendment complaint, it asks for actual damages, including lost profits, out-of-pocket losses. It's there, Your Honor. You're talking about your complaint? Yes, in the complaint. Yeah, I saw that at the end of your complaint. Out-of-pocket losses, incidental and consequential damages, treble damages, punitive and exemplary damages, prejudgment, prejudgment interest, award of attorney's fees, and such other reliefs as the court may deem proper. So yes, we did raise that in the lower court level. And those damages are substantial in and of themselves. They're hiring employees. They're obtaining distributors. By the way, the contract was precise. Parties can negotiate a contract on their own terms. There was no provision for quantity. The lower court got that wrong because under Texas beverage requirements, you could not put a quantity in. The seller could not... The liquor could not impose that on the retailer, which is why it has to go through distributors. And these distributors were, by and large, owned by the Fertitta Group, and they knew the pricing. So the pricing was also provided. So you did have not just pricing, but you had showcasing. This was the essence of the deal, to showcase the product in 600 facilities, to have it on the menu, to have customers be able to buy it. And as we set forth in our briefs and even in the complaint, the owner of Fertitta Entertainment and Landry's, Tillman Fertitta, at Maestro's Restaurant in Houston, tested our client's vodka blindly. My client handed it to them. They said, which one's better? He said, well, yours is better than Tito's vodka. So this had a tremendous potential to sell, and they were exuberant at the thought of Rokit becoming their partner in these two contracts. But the bottom line is this. And by the way, an implied contract can arise from a number of writings. It doesn't have to be all in a single place. And of course, we cited in the complaint and in the brief some of the writings that shows that there was an implied contract. And just as a matter of logic, you have an express contract that's all in one document. You have an implied contract. It's equal. So even if you went beyond the one year, the statute of limitations wouldn't apply because you have two valid contracts. But here, there's no showing that this couldn't have been performed within one year because, as you note, with the sponsorship agreement, there were payments that were due each year. Millions of dollars each year. It wasn't a total payment. It was year by year. So for all of these reasons, Your Honor, is that we have a right to have this case go back in all due respect. We have the right to take discovery. We have the right to develop the facts. It's factually intensive, this case, and the lower court judge could not take it away from the trier of fact based upon Twombly. There certainly is plausibility here. You know, there's more than a scintilla of proof that's set forth in the Formosa case and every other case that I'm sure Your Honor confronts. So that's the bottom line. Can I save a minute for rebuttal and add it on to the . . . You have five minutes for rebuttal. Right, so I've got a minute. You don't get to add whatever you have left over here. Okay, no harm in trying, right? Good try. Let me sum it all up. Is that you have a sponsorship agreement where a client's paying $9.7 million. To lure my client into that, the Fertitta Entertainment Group and Landry says, Oh, we'll give you this beverage agreement, too, where we're going to sell it in 600 of our restaurants around the world. We have tremendous reach. We're agreeing to showcase the product. Yours gets showcased above and beyond everyone else, particularly with vodka. And we are also understanding what the price is going to be because we're asking you and requiring you to deal with our distributors. So there were concrete terms. And consequently, there was an implied contract as well as a written contract with regard to the sponsorship agreement implied for the beverage agreement. This would eliminate any statute of frauds issue. But even if you had a statute of frauds issue, just on the basis of the fraud, the fraud and the inducement in the cases that I cited and the ones we have in our briefs, plus promissory estoppel would jump over the statute of frauds. Tortious interference with Bogart's LLC and, of course, the breach of contract. These are all valid claims that had to be subject to discovery, and this case should not have been cut short. Thank you, Your Honor.  May it please the Court. Counsel? Counsel, why don't you stay at the appellant's table and you'll be available for rebuttal. But it's quite all right. May it please the Court. Elizabeth Butler for the Appellees, Landry's, and Fertitta Entertainment. This argument is just another example of how Rockett's story has been evolving throughout the course of this case. I'd like to begin with the statute of frauds issue. For one thing, Rockett has never stated that this contract could not be performed within five years. It's... within a year. It's undisputed that this contract had a five-year term. I would point you to Rockett's brief at page 9. That's been established this entire time. They've never argued before that that's the reason this wouldn't fit within the statute. Is there a reason to distinguish the beverage contract aspect of this and the sponsorship? So the beverage agreement and the sponsorship agreement were two separate contracts. That's what they've pleaded the entire time. If these two contracts were tied, that would be illegal under the Texas Alcoholic Beverages Code. So that's why this entire time they've maintained that they're separate agreements. Why is this whole contract illegal under that statute? So the Texas Alcoholic Beverages Code prohibits the tying of alcohol contracts to other contracts, and there's a specific provision of the Alcoholic Beverages Code. It is 102.07, and that prohibits an alcohol manufacturer from giving anything of value to a retailer. Texas keeps the different tiers of the alcoholic beverages industry separate. So if these two agreements were linked, that would violate that provision. I would also point you to the sponsorship agreement itself, which is in the record. It explicitly states that it's not conditioned on the sale of alcohol. That contract contains a merger clause. So there really is no credible argument that these two agreements were tied. But if they were, that would be an illegal contract that this court could not enforce. So you say they were not tied? Our position is that they're not tied. Rocket has been inconsistent in their pleadings with whether they are or are not tied. So we just, you know, addressing those arguments, we're saying if we believed that allegation that they were tied, that would be an illegal contract that can't be enforced. Returning to the statute of frauds issue, so the actual issue before the district court... I don't understand why you're so timorous about that defense. Sorry? I don't understand why you're so timorous about that defense. Seems like it solves the whole case. I'm happy to address illegality. This is an illegal contract under Texas law, and the whole thing falls, right? That's absolutely correct, Judge Dennis. And there's multiple ways that this contract would be illegal. So the tying provision is one of them. You know, if the sponsorship agreement and the beverage agreement are tied, that's an illegal contract. Just to be clear, and I want you to keep answering Judge Dennis' question, but this is something Judge Eskridge did not reach. Is that correct? Correct. Okay, just want to lay that groundwork. Keep going. Yes. So the tying provision is one way that it would be illegal. Another way that the contract would be illegal that they haven't even contested is the TABC administrative rules, and so these prohibit as an illegal inducement certain practices that put retailer independence at risk. This is 16 Texas Admin Code 45110C, and listed among these practices are that the retailer had a continuing obligation to purchase or otherwise promote the industry member's product, that the practice restricts or hampers the free economic choice of a retailer to decide which products to purchase or the quantity in which to purchase those products, or the retailer has a commitment not to terminate a relationship with a member of the manufacturing or wholesale tier with respect to the purchase of that member's products. So this alleged agreement to showcase what they say promote or sell Rocket Drinks products in Landry's properties violates all of these provisions and would be illegal. And then the third way in which this contract would be illegal is TABC 102.16A, which prohibits an alcoholic beverage manufacturer from entering into an agreement where another person would be required or influenced to purchase a certain volume or quota of business, more or less, of types of alcohol. And this doesn't require that there be a specific quantity that's agreed to, but an agreement to buy some quantity of alcohol would violate this provision. And Judge Helwig, I'd like to address your question about whether Landry's knowledge of the illegality would affect this defense. And the answer to that is no. So Texas law doesn't have any kind of exception for if one party knew the contract was illegal and the other didn't. No sophisticated party component to the issue? So certainly, where there are two sophisticated parties, that's a case where especially the court is not going to enforce any kind of illegality exception. But, I mean, there's just not one in general. The only exception is for unequal knowledge of the facts, not unequal knowledge of the law. And I would actually point the court to two cases where this issue has been directly addressed. So Plumlee v. Paddock. It's from the Fort Worth Court of Appeals. It's 832 SW 2nd 757. And then a case from this court, Packard v. OCA. It's 624 F 3rd 726. Were you also citing to us cases that were not in the... We did not cite to these cases because this issue wasn't raised until their reply brief. We have cited these cases below in our further reply in support of motion to dismiss, which I believe is at record 488. But these illegality issues, you know, they didn't bring this defense up until their reply brief so we just didn't have a chance to respond to this. But both of those cases hold that where there are sophisticated entities involved, one can't claim that they didn't know the law and therefore the illegal agreement should be enforced. Let's say we don't accept that argument for whatever reason. A lot of times we do things counsel disagree with. Let's say we don't accept it. Let's go back to the statute of frauds. What other issue and other questions I was asking your opponent called the entitlement under Texas law potentially to out-of-pocket expenses. Something Judge Eskridge did not address. Was it raised   sufficiently? I do think it is in the damage clause of the complaint. I don't know how much it's in the text. I didn't look at the briefing. I'm just kind of wondering why it was ignored in the district court decision. That's one question. Can you explain why it's ignored but then I want you obviously to address the law as well as how that plays out. Sure. So we think it's not really clear that anything that they've pleaded is out-of-pocket damages. You know, their brief doesn't specify what those out-of-pocket damages would be. To the extent that the court thinks... So in the explanation of all the things that happened in the complaint, that explanation, there's no statement about the  that were being incurred to perform under this contract? Under this non-contract in your view? There are some kind of vague allegations about steps that they took to pursue this contract but we think this case doesn't fall into the out-of-pocket damages exception because the damages that they're seeking for fraud are the same as the damages that they're  seeking for breach of contract and the misrepresentations that form the basis of their fraud claim are the same as those that form the  of the  of contract claim. So typically in those scenarios courts have said that those damages would also be barred by the statute of frauds but again to the extent that you're hung up on that issue I would point you to illegality because there is no such out-of-pocket damages exception in the illegality context they haven't pleaded such an exception and that's because of this larger Texas policy of not enforcing illegal contracts and leaving the parties to illegal contracts where the court found them. But just to address your question about the statute of frauds so the real issue was whether there is a signed writing because again it's undisputed that this agreement had a five year term so that's not going to fall within the statute of frauds unless there is a signed writing and their pleadings actually affirmatively established that there is no signed writing so in their original complaint they pleaded that the beverage deal could only be a verbal agreement that's at record 14 and in their second amended complaint after they removed that allegation they still include an email from Jonathan Kendrick who's the CEO of Rocket and he says I know we couldn't put this in the contract but it was clearly agreed that you would help us get your drinks into our outlets that's record 217 and once the district court pushed them to  a signed writing to try to save these   the best they could do was come up with a series of  but those emails only reflect a potential deal between the parties they certainly don't reflect any kind of executed agreement that was ever completed and they also point to these distributor agreements but Landry's is not a party to those agreements there's no allegation that Landry's ever ratified or  those agreements and they're certainly not a       did not bring a claim for fraudulent inducement they brought claims for fraud by non-disclosure and fraudulent misrepresentation to the extent they brought a claim for fraudulent inducement and they would not be able to recover damages for that because fraudulent inducement requires proof of a contract proof that you were fraudulently induced into a contract and you can look at the  case for that proposition and again they didn't cite Formosa in their briefing I know you asked that and then addressing the promissory estoppel and tortious interference claims so those go by a similar rule to  but those were not addressed by the statute of fraud and there's no allegation that that exception applies here and tortious interference again it's a similar rule the  interference claim can't proceed where it should and it's  similar                         to the statute of fraud and it's a similar  to the   fraud and it's a similar rule to the statute of fraud and it's a similar  to  statute of fraud and it's a similar rule     fraud and it's a similar rule to the statute of fraud and it's a similar rule to the statute of law . statute of law . It's a similar rule  to the statute    It's